UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MICHAEL G. K.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:20-cv-00254-GCS[2] |
| | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), Plaintiff seeks judicial review of the final agency decision denying his application for Disability Insurance Benefits ("DIB") pursuant to 42 U.S.C. § 423.

### PROCEDURAL HISTORY

Plaintiff filed for DIB in 2017; in his application, he alleged that his disability began in 2011. (Tr. 54-55). However, Plaintiff's claim was unsuccessful, both initially and on reconsideration. (Tr. 59, 68). In 2019, the Administrative Law Judge ("ALJ") held a hearing on Plaintiff's case. (Tr. 31). Plaintiff testified and was represented by counsel. *Id.* Nevertheless, in March 2019, the ALJ determined that Plaintiff was not disabled. (Tr. 23).

---

[1]    In keeping with the court's usual practice, Plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. *See* FED. R. CIV. PROC. 5.2(c) and the Advisory Committee Notes thereto.

[2]    This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. § 636(c). *See* (Doc. 14).

The Appeals Council denied review of that decision in 2020, thus making the ALJ's determination the final decision of the Commissioner. (Tr. 1).

### ISSUE RAISED BY PLAINTIFF

Plaintiff raises the following issue:

1.  The ALJ erred in failing to account for deficits of concentration, persistence, or pace in the residual functional capacity ("RFC") finding.

### APPLICABLE LEGAL STANDARDS

To qualify for DIB, a claimant must be disabled within the meaning of the applicable statutes. Under the Social Security Act, a person is disabled if he has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a).

To determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform his or her former occupation? and (5) Is the plaintiff unable to perform any other work? *See* 20 C.F.R. § 404.1520.

An affirmative answer at either step three or step five leads to a finding that the plaintiff is disabled. A negative answer at any step, other than at step three, precludes a

finding of disability. The plaintiff bears the burden of proof at steps one through four. Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work existing in significant numbers in the national economy. *See Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

It is important to recognize that the scope of judicial review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *See Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). The Supreme Court defines substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *See Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. *See Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010).

## THE DECISION OF THE ALJ

The ALJ followed the five-step analytical framework described above. He first found that Plaintiff did not engage in substantial gainful activity from the alleged onset of his disability through the date on which he was last insured, which was March 31, 2017. (Tr. 16). The ALJ found that Plaintiff had severe impairments of atrial fibrillations, hypertension, obstructive sleep apnea, anxiety, depression, right-sided hearing loss, and alcohol abuse disorder in remission. *Id.* These impairments significantly limited Plaintiff's ability to perform basic work activities. *Id*. Though the ALJ also found evidence that Plaintiff contended with both obesity and back pain, he did not find that either alleged impairment significantly limited Plaintiff's mental or physical ability to perform work related activities. (Tr. 17). Further, the record did not contain objective testing necessary to verify Plaintiff's subjective back pain reports. *Id*. The ALJ therefore found this impairment was non-medically determinable. *Id*.

Although Plaintiff suffered from severe impairments, the ALJ determined that these impairments and the combination of the impairments did not meet or medically equal the severity of those impairments listed in 20 C.F.R. § 404. (Tr. 17-18). Of particular importance to this case, the ALJ found that Plaintiff's anxiety and depression (Plaintiff's "mental impairments") did not meet the criteria listed in 12.04 and 12.06. (Tr. 18). The ALJ noted that Plaintiff must demonstrate at least one extreme or two marked limitations in a broad area of function, including: "understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or

adapting or managing themselves." *Id*. A claimant demonstrates a marked limitation when they are unable to function in an area independently, appropriately, or effectively on a sustained basis. *Id*. An extreme limitation is the inability to function independently, appropriately, or effectively in the area. *Id*. The ALJ found Plaintiff demonstrated a moderate limitation in understanding, remembering, or applying information, and in concentrating, persisting, or maintaining pace. *Id*. However, the ALJ found no limitation in interacting with others or in adapting and managing oneself. *Id*. As Plaintiff's mental impairments did not cause two marked limitations or one extreme limitation, the ALJ concluded that Plaintiff did not satisfy the requirements listed in 12.04 and 12.06. *Id*.

The ALJ considered opinions from two state psychological consultants, both of whom opined that there was insufficient evidence to evaluate Plaintiff's claim for his mental impairments. (Tr. 21). Though the ALJ found these opinions reasonable, he also determined that additional evidence received into the record during the hearing demonstrated that Plaintiff was more limited than originally thought. *Id*. Nevertheless, the ALJ determined that Plaintiff's claimed limitations would not interfere with his ability to function independently, appropriately, effectively, and on a sustained basis if certain measures were put in place in Plaintiff's work environment. *Id*. The ALJ therefore determined that, in addition to being able to perform modified physical work, Plaintiff could "perform simple tasks not at a production rate pace." (Tr. 18-19).

**THE EVIDENTIARY RECORD**

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. As Plaintiff appeals the ALJ's decision pertaining to Plaintiff's mental impairments only, the Court has provided only the relevant portions of the evidentiary record below.

**1.      Evidentiary Hearing**

Plaintiff was represented by an attorney during the January 23, 2019 evidentiary hearing. (Tr. 31). Though Plaintiff was unemployed at the time of the hearing, his most recent employer was with the Fish Lake Country Club; Plaintiff left that employment in 2015. (Tr. 33). While employed, Plaintiff interacted with customers and assisted as a cashier. *Id*.

Plaintiff testified that he began seeing a counselor on the advice of his attorney after an incident in which he received a ticket for trespassing on his girlfriend's property. (Tr. 35-36). The counselor recommended that Plaintiff be prescribed medications to treat his depression. (Tr. 37). Plaintiff testified that he consistently took his medication for eight or nine years and that it helped a lot with his depression. (Tr. 37-38). Plaintiff also testified that he is no longer in counseling and has not had any admissions into a psychiatric facility for any mental health issue. (Tr. 38).

Although Plaintiff's medical record indicated that he struggled with alcohol abuse, Plaintiff testified that he had not had any issues with drinking for seven years. (Tr. 36). Plaintiff stated that he had never had a violation for alcohol use; his counselor, however,

wanted to test him for alcohol when he first began seeing a therapist. (Tr. 37). Overall, Plaintiff stated that he had two or three drinks in the last year. (Tr. 36).

When asked why he was not currently employed, Plaintiff answered that his hearing made his career in law enforcement particularly difficult, because he could not identify the direction in which gun shots originated. (Tr. 40-41). His hearing loss also made it difficult for him to discuss his job at Fish Lake with his manager and to communicate with customers. (Tr. 41). Plaintiff also testified that he struggled with physical labor, such as meat-packing, because his back would "stiffen up." (Tr. 42). Plaintiff did not state that his mental health prevented him from working.

The ALJ also examined vocational expert ("VE") Dr. Roxane Minkus. (Tr. 42). The ALJ asked Dr. Minkus whether a person limited to climbing ladders occasionally, who must avoid concentrated exposure to hazards, such as heights, and must work in an environment no louder than moderate noise, who would also be restricted to simple tasks at a not-production-rate pace, could perform Plaintiff's past work. (Tr. 43-44). Dr. Minkus answered "no;" however, she did state that such a person could perform other work in the national economy. (Tr. 44). The hearing concluded with Dr. Minkus's testimony. (Tr. 47).

   2.   **Medical Records**

Plaintiff first saw a therapist for depression on February 8, 2011. (Tr. 283). During his intake session, Plaintiff reported difficulty sleeping, nightmares, and alcohol use, as well as feelings of sadness and guilt. *Id*. He also identified himself as an alcoholic and

described treatment he received in 1993. *Id*. Plaintiff's intake therapist noted that Plaintiff was oriented to time, place, and situation. (Tr. 284). Plaintiff's attention and concentration were within normal limits, and he appeared to be of average intelligence. *Id*. He also had clear and coherent thoughts, and his memory for recent and past events appeared intact. *Id*.

On February 28, 2011, Plaintiff returned for further counseling on referral from his then-employer, the State of South Dakota Bureau of Personnel. (Tr. 287). Plaintiff reported that he had been drinking on the date on which he was charged with trespassing. (Tr. 288). He explained that he often drinks less when his job is "really busy;" however, he also reported that he would consume alcohol at home about three times per week. (Tr. 289). He denied drinking to the point of intoxication, including on the date on which he was charged with trespassing. *Id*. However, Plaintiff's therapist noted that the police report from that incident indicated that Plaintiff slurred his words, walked with a stagger, and smelled of alcohol. *Id*. Overall, Plaintiff's therapist found that Plaintiff had a pattern of abusing alcohol to cope with stress. *Id*. The therapist also determined that Plaintiff was not "the most reliable of historians." (Tr. 290).

Plaintiff's therapist also noted that Plaintiff took Effexor, Prozac, and Valium to treat his depression. (Tr. 287). Plaintiff's test results showed no impairment of gross cognition; Plaintiff also showed no overt signs of any thought disorder. (Tr. 289). Plaintiff showed no indications of cognitive, emotional, thought, behavioral or interpersonal

dysfunctions. (Tr. 290). However, Plaintiff's therapist found that Plaintiff attempted to present himself "as more well-adjusted than he is in reality." *Id*.

Plaintiff reported to therapy again on March 2nd and March 9th, 2011. (Tr. 293-294). At both sessions, the therapist noted no specific dysfunction. *Id*. Plaintiff attended therapy for the last reported time on April 13, 2011. (Tr. 295). According to Plaintiff, his Effexor dosage was no longer effective. *Id*. Plaintiff's therapist noted that he struggles with concentration and would often have a beer to assist him with focus. (Tr. 295-296). Though Plaintiff's therapist recommended alcohol treatment, Plaintiff refused to complete the treatment, and therefore felt he could not continue with his job. (Tr. 297). Plaintiff consequently retired from his position as a conservation officer. *Id*. Plaintiff's therapist also found that Plaintiff showed signs of depression and anxiety. (Tr. 296). For treatment, Plaintiff's therapist increased his Effexor dosage to 150 milligrams. (Tr. 298).

### 3. The State Agency Consultant's Review

Although the ALJ referenced reviews from a state psychological consultant at the initial and reconsideration level, Plaintiff's evidentiary transcript does not contain any records of a review from a State Agency Consultant. *See* (Tr. 21).

## ANALYSIS

Even though the ALJ directed that Plaintiff be limited to "simple tasks not at a production-rate pace," Plaintiff argues that the ALJ failed to make any finding of consequence for such a moderate limitation. (Doc. 20, p. 4). The Seventh Circuit has been very clear that a limitation to simple instructions or to simple, routine tasks does not

adequately account for a moderate limitation in maintaining concentration, persistence, or pace. "The ability to stick with a given task over a sustained period is not the same as the ability to learn how to do tasks of a given complexity." *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010). Instead, the Seventh Circuit has repeatedly held, with exceptions not applicable here, that a limitation to simple, repetitive tasks or to unskilled work does not adequately account for a moderate limitation in maintaining concentration, persistence or pace. In *Stewart*, for example, the Court observed, "[t]he Commissioner continues to defend the ALJ's attempt to account for mental impairments by restricting the hypothetical to 'simple' tasks, and we and our sister courts continue to reject the Commissioner's position." *Stewart v. Astrue*, 561 F.3d 679, 685 (7th Cir. 2009) (citations omitted). The Court has reaffirmed that position several times in recent years. *See O'Connor-Spinner*, 627 F.3d at 620; *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014); *Varga v. Colvin*, 794 F.3d 809, 814 (7th Cir. 2015); *Taylor v. Colvin*, 829 F.3d 799, 802 (7th Cir. 2016); *Moreno v. Berryhill*, 882 F.3d 722, 730 (7th Cir. 2018), as amended on reh'g (Apr. 13, 2018); *DeCamp v. Berryhill*, 916 F.3d 671, 676 (7th Cir. 2019).

Here, the ALJ provided the straightforward limitation that Plaintiff be assigned only to simple tasks, not at a production-rate pace. (Tr. 18-19). However, that is not sufficient to account for a moderate limitation in maintaining concentration, persistence, or pace. Indeed, "observing that a person can perform simple and repetitive tasks says nothing about whether the individual can do so on a sustained basis, including, for

example, over the course of a standard eight-hour work shift." *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019). The Seventh Circuit put it succinctly in a recent case:

> As we have labored mightily to explain, however, the relative difficulty of a specific job assignment does not necessarily correlate with a claimant's ability to stay on task or perform at the speed required by a particular workplace. . . . Put another way, someone with problems concentrating may not be able to complete a task consistently over the course of a workday, no matter how simple it may be.

*Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020).

The ALJ in *Martin* adequately accounted for deficiencies in maintaining concentration, persistence, and pace by limiting the plaintiff to jobs that involve "only simple tasks with low stress, occasional changes, a flexible pace, and superficial interactions with others." *Martin*, 950 F.3d at 373. Similarly, in *Burmester*, the Seventh Circuit found no error where the ALJ limited the plaintiff to "simple, routine, repetitive tasks requiring only simple work-related decisions with few changes in the routine work setting and no more than occasional interaction with supervisors, coworkers, and the general public." *Burmester*, 920 F.3d at 509. The reviewing doctor in that case "stated in the 'Statement of Work Capacity' portion of his assessment that Burmester had the 'ability to understand, remember and carry out simple instructions subject to physical limitations,' that 'maintaining concentration and attention should be manageable' and that she 'should be able to withstand routine work stress and adapt to typical job site changes.'" Whereas the issue of maintaining concentration, persistence, and pace is directly addressed in *Martin* and *Burmester*, the ALJ's limitation in the instant case does not address this concern. Rather, it is simply assumed that the restriction to simple tasks at a non-production rate pace will account for this potential problem.

Seventh Circuit precedent does not require the ALJ to use specific words to express a claimant's limitations in maintaining concentration, persistence, or pace. The Seventh Circuit, however, explained what was required when it stated the following: "[w]e decline to provide a glossary of adjectives for use in RFC determinations. What we do require—and our recent precedent makes plain—is that the ALJ must account for the 'totality of a claimant's limitations' in determining the proper RFC." *Martin*, 950 F.3d at 374. The limitation to simple tasks not at a production-rate pace is not sufficient for the reasons explained in the cases cited above, *i.e.*, the complexity of a task is not related to the ability to stick with the job for a full shift. While the limitation to no production requirements such as an assembly line does address difficulties in maintaining pace, it does not address attention and concentration. *See Martin*, 950 F.3d at 374; *Varga* 794 F.3d at 815. The Seventh Circuit reiterated this point when it stated: "there is no basis to suggest that eliminating jobs with strict production quotas or a fast pace may serve as a proxy for including a moderate limitation on concentration, persistence, and pace." *DeCamp*, 916 F.3d at 676.

The Commissioner relies on *Jozefyk v. Berryhill*, 923 F.3d 492 (7th Cir. 2019). There, the Seventh Circuit rejected the plaintiff's argument that it was error to omit a reference to a moderate limitation in concentration, persistence, or pace from the RFC assessment and hypothetical question where "according to the medical evidence, his impairments surface only when he is with other people or in a crowd." *Jozefyk*, 923 F.3d at 498. That

case, however, is distinguishable from the case at hand on that very basis. The Seventh Circuit explained its holding in *Jozefyk* in a later case:

> In closing, we owe a word to the Commissioner's reliance on our recent decision in *Jozefyk v. Berryhill*, 923 F.3d 492 (7th Cir. 2019). We do not read *Jozefyk* to save the shortfalls in the ALJ's analysis here. In *Jozefyk*, we determined that any error in formulating the RFC was harmless because the claimant had not testified about any restrictions in his capabilities related to concentration, persistence, or pace, and the medical evidence did not otherwise support any such limitations. 923 F.3d at 498. As the Commissioner concedes, the facts here are different. The medical evidence plainly shows, and the ALJ recognized, that Crump suffers from CPP limitations.

*Crump*, 932 F.3d at 571.

Similar to *Crump* above, Plaintiff testified that he was unable to work due, in part, to his depression. (Tr. 19). Although the ALJ found that Plaintiff's anxiety, depression, and alcohol abuse disorder in remission "are less limiting than alleged," he also found that Plaintiff "was more limited than originally thought." (Tr. 21). While the ALJ references evidence in the record, he does not tie that evidence to his RFC in this case.

The Commissioner also points to *Urbanek v. Saul*, No. 19-1394, 796 Fed. Appx. 910 (7th Cir. Dec. 16, 2019); *Pytlewski v. Saul*, No. 18-3673, 791 Fed. Appx. 611 (7th Cir. Nov. 12, 2019); and *Morrison v. Saul*, No. 19-2028, 806 Fed. Appx. 469 (7th Cir. Mar. 10, 2020). (Doc. 26, p. 7). In each of these cases, the Seventh Circuit held that generic limitations, including limiting a claimant to simple tasks, may properly account for moderate limitations only if they adequately account for the claimant's demonstrated psychological symptoms as found in the record. *See Urbanek*, 796 Fed. Appx. 910, 914 (citing *Jozefyk*, 923 F.3d at 498) (further citations omitted). However, the ALJ in this case does not support

his findings by pointing to evidence in the record. Instead, he acknowledges and evaluates Plaintiff's testimony as unreliable, but also finds that the state psychological consultants' reviews did not fully account for Plaintiff's limitations. (Tr. 21). Though the ALJ discusses Plaintiff's anxiety, depression, and alcohol dependency, he does not explain whether Plaintiff struggles with continued concentration throughout the day, or why his limitation would address that concern. This analysis leaves a gap in which Plaintiff must guess why, exactly, the ALJ issued the generic limitation restricting Plaintiff to simple tasks not at a production-rate pace.

The Commissioner also argues that Plaintiff bears the burden to demonstrate that the ALJ's RFC was insufficient based on Plaintiff's specific symptoms and functional limitations. (Doc. 26, p. 10). However, this standard omits the Court's mandate to remand the ALJ's decision when that decision is insufficiently clear. When deciding an appeal of a decision to deny SSI benefits, an ALJ must adequately articulate his or her analysis so that others can follow the reasoning employed. *See Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007). This articulation assists both the applicant and later courts of appeal in understanding the decision, because without an adequate explanation, "neither the applicant nor subsequent reviewers will have a fair sense" of how the ALJ weighed the evidence that was presented. *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002). In outlining the decision, the ALJ must "build an accurate and logical bridge" from the evidence to the conclusion. *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). Here, the ALJ rejected both Plaintiff's account of his limitations, and the state psychological

reviewers' contrary opinions. He provided no support for his eventual finding by demonstrating what evidence he *did* rely on when arriving at his RFC. "If a decision 'lacks evidentiary support or is so poorly articulated as to prevent meaningful review,' a remand is required." *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012) (internal citation omitted). Accordingly, remand is required in this case.

This Memorandum and Order should not be construed as an indication that the Court believes that Plaintiff was disabled during the relevant period or that he should be awarded benefits. On the contrary, the Court has not formed any opinions in that regard and leaves those issues to be determined by the Commissioner after further proceedings.

## CONCLUSION

The Commissioner's final decision denying Plaintiff's application for disability benefits is **REVERSED** and **REMANDED** to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence <u>four</u> of 42 U.S.C. § 405(g).

The Clerk of Court is directed to enter judgment in favor of Plaintiff.

**IT IS SO ORDERED.**

**DATE: September 20, 2021.**

Digitally signed by Judge Sison 2
Date: 2021.09.20 12:25:17 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**